IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
KAREN D. MCQUEEN,              )
                               )
              Plaintiff,       )
                               )
      v.                       )         1:13CV421
                               )
CAROLYN W. COLVIN,             )
Acting Commissioner of         )
Social Security,               )
                               )
              Defendant.       )
```

### MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff, Karen D. McQueen, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), codified as amended at 42 U.S.C. §§ 405(g), 1383(c)(3), to obtain review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. The court has before it the certified administrative record and cross-motions for judgment.

### I.  BACKGROUND

Plaintiff filed applications for DIB and SSI on August 27, 2009, alleging a disability onset date of June 15, 2009, that was later amended to October 1, 2009. (Tr. at 9, 26, 134-45

(noting that she applied for SSI on September 8, 2009.)[1]  The

applications were denied initially and again upon

reconsideration.  (Id. at 55-67, 71-89.)  Plaintiff then

requested a hearing before an Administrative Law Judge ("ALJ").

(Id. at 92-106.)  Plaintiff, her attorney, and a vocational

expert ("VE") attended the May 12, 2011 hearing. (Id. at 22-54.)

On July 14, 2011, the ALJ determined that Plaintiff was not

disabled under the Act.  (Id. at 9-19.)

Specifically, the ALJ concluded that (1) Plaintiff had not

worked during the relevant period; (2) her severe impairments

were bursitis of the right shoulder and thumb, chronic

obstructive pulmonary disorder, degenerative disc disease of the

cervical and lumbar spine with mild disc bulge, depression,

bipolar disorder, and anxiety; (3) she did not meet or equal a

listed impairment; (4) she could perform a full range of light

work but should only occasionally climb stairs or ramps, should

only occasionally bend, balance, stoop, crawl, or crouch, should

never climb ladders or ropes, should avoid hazardous machinery

or exposure to fumes, should only occasionally reach overhead,

and should only perform simple, repetitive, and routine tasks,

---

[1] Transcript citations refer to the Administrative
Transcript of Record filed manually with the Commissioner's
Answer.  (Doc. 7.)

with only occasional contact with others; and (5) she was unable
to perform any past relevant work but there were other jobs she
could perform.  (Id. at 11-19.)  Plaintiff requested that the
Appeals Council review the ALJ's decision and, on April 9, 2013,
the Appeals Council denied Plaintiff's request for review,
making the ALJ's determination the Commissioner's final decision
for purposes of review.  (Id. at 1-4.)

## II.  LEGAL STANDARD

Federal law authorizes judicial review of the
Commissioner's denial of social security benefits. 42 U.S.C.
§ 405(g); Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).
However, the scope of review of such a decision is "extremely
limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
"The courts are not to try the case de novo."  Oppenheim v.
Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "[a
reviewing court] must uphold the factual findings of the [ALJ]
if they are supported by substantial evidence and were reached
through application of the correct legal standard."  Hancock v.
Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citation omitted).

"Substantial evidence means 'such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion.'"  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir.
1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).
"[I]t consists of more than a mere scintilla of evidence but may

-3-

be somewhat less than a preponderance." Mastro v. Apfel, 270
F.3d 171, 176 (4th Cir. 2001) (citation omitted). "If there is
evidence to justify a refusal to direct a verdict were the case
before a jury, then there is substantial evidence." Hunter, 993
F.2d at 34 (internal quotation marks and citation omitted).

"In reviewing for substantial evidence, [the court should
not] undertake to re-weigh conflicting evidence, make
credibility determinations, or substitute [its] judgment for
that of the [ALJ]." Mastro, 270 F.3d at 176 (citation omitted).
"Where conflicting evidence allows reasonable minds to differ as
to whether a claimant is disabled, the responsibility for that
decision falls on the [ALJ]." Hancock, 667 F.3d at 472
(citation omitted).

In undertaking this limited review, this court notes that
"[a] claimant for disability benefits bears the burden of
proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th
Cir. 1981) (citations omitted). In this context, "disability"
means the "inability to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which can be expected to result in death or
which has lasted or can be expected to last for a continuous
period of not less than 12 months . . . ." Id. (quoting 42
U.S.C. § 423(d)(1)(A)).

-4-

"The Commissioner uses a five-step process to evaluate
disability claims."  Hancock, 667 F.3d at 472 (citing 20 C.F.R.
§§ 404.1520(a)(4), 416.920(a)(4)).  "Under this process, the
Commissioner asks, in sequence, whether the claimant: (1) worked
during the alleged period of disability; (2) had a severe
impairment; (3) had an impairment that met or equaled the
requirements of a listed impairment; (4) could return to her
past relevant work; and (5) if not, could perform any other work
in the national economy."  Id.

A finding adverse to the claimant at any of several points
in this five-step inquiry forecloses a disability designation
and ends the inquiry.  For example, "[t]he first step determines
whether the claimant is engaged in 'substantial gainful
activity.' If the claimant is working, benefits are denied.  The
second step determines if the claimant is 'severely' disabled.
If not, benefits are denied."  Bennett v. Sullivan, 917 F.2d
157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden
at the first two steps, and if the claimant's impairment meets
or equals a listed impairment at step three, "the [claimant] is
disabled."  Mastro, 270 F.3d at 177.  Alternatively, if a
claimant clears steps one and two, but falters at step three,
i.e., "[i]f a claimant's impairment is not sufficiently severe
to equal or exceed a listed impairment," then "the ALJ must

-5-

assess the claimant's residual functional capacity ('RFC')."
Id. at 179.[2]

Step four then requires the ALJ to assess whether, based on
that RFC, the claimant can "perform past relevant work"; if so,
the claimant does not qualify as disabled.  See id. at 179-80.
However, if the claimant establishes an inability to return to
prior work, the analysis proceeds to the fifth step, which
"requires the [Government] to prove that a significant number of
jobs exist which the claimant could perform, despite [the
claimant's] impairments."  Hines, 453 F.3d at 563.  In making
this determination, the ALJ must decide "whether the claimant is
able to perform other work considering both [the claimant's RFC]
and [the claimant's] vocational capabilities (age, education,
and past work experience) to adjust to a new job."  Hall, 658
F.2d at 264-65.  If, at this step, the Government cannot carry
its "evidentiary burden of proving that [the claimant] remains

---

[2] "RFC is a measurement of the most a claimant can do
despite [the claimant's] limitations."  Hines, 453 F.3d at 562
(citation omitted).  The RFC includes both a "physical
exertional or strength limitation" that assesses the claimant's
"ability to do sedentary, light, medium, heavy, or very heavy
work," as well as "nonexertional limitations (mental, sensory,
or skin impairments)."  See Hall, 658 F.2d at 265.  "RFC is to
be determined by the ALJ only after [the ALJ] considers all
relevant evidence of a claimant's impairments and any related
symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63 (citation
omitted).

able to work other jobs available in the community," the claimant qualifies as disabled.  See Hines, 453 F.3d at 567.[3]

## III. ANALYSIS

Plaintiff first asserts that the ALJ's credibility analysis is not supported by substantial evidence.  (Plaintiff's Memorandum in Support of Motion for Judgment on the Pleadings (Doc. 12) at 1, 4-7.)  Plaintiff's second contention is that the ALJ erred in his evaluation of the medical evidence and opinions.  (Id. at 1, 7-8.)

Moreover, upon review of the ALJ's decision, it appeared to this court that the recent ruling of the United States Court of Appeals for the Fourth Circuit in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), may be applicable.  Consequently, the court afforded the parties an opportunity to brief the impact, if any, of Mascio on the ALJ's decision.  (Order (Doc. 16) at 1-3.) The court has received and reviewed the parties' supplemental briefing, (see Docs. 17, 18), the entire record, and all additional pleadings.  For the reasons explained below, remand is in order.

---

[3] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  See Mascio v. Colvin, 780 F.3d 632, 634-35 (4th Cir. 2015).

**A.   Credibility**

Regarding credibility, Craig v. Chater, 76 F.3d 585 (4th
Cir. 1996), outlines the two-part test for evaluating a
claimant's statements about symptoms. "First, there must be
objective medical evidence showing 'the existence of a medical
impairment(s) which results from anatomical, physiological, or
psychological abnormalities and which could reasonably be
expected to produce the pain or other symptoms alleged.'"
Craig, 76 F.3d at 594 (citing 20 C.F.R. §§ 416.929(b),
404.1529(b)) (other citation omitted). If the ALJ determines
that such an impairment exists, the second part of the test then
requires him to consider all available evidence, including the
claimant's statements about pain, in order to determine whether
the claimant is disabled.  Id. at 595-96 (describing that, if
the threshold step is met, then "the intensity and persistence
of the claimant's pain, and the extent to which it affects her
ability to work, must be evaluated" (citations omitted)).  While
the ALJ must consider a claimant's statements and other
subjective evidence at step two, he need not credit them insofar
as they conflict with the objective medical evidence or to the
extent that the underlying impairment could not reasonably be
expected to cause the symptoms alleged.  See id. at 595.  Where
the ALJ has considered the relevant factors and heard the
claimant's testimony and observed his demeanor, the ALJ's

-8-

credibility determination is entitled to deference.  See Shively
v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) ("Because he
had the opportunity to observe the demeanor and to determine the
credibility of the claimant, the ALJ's observations concerning
these questions are to be given great weight." (citation
omitted)).

Here, the ALJ completed the two-step Craig analysis, but he
committed error at step two.  First, the ALJ stated that he had
"careful[ly] consider[ed]" the evidence and found that
Plaintiff's "medically determinable impairments could reasonably
be expected to cause the alleged symptoms[.]"  (Tr. at 14-15.)
The ALJ therefore discharged his duty under the first step of
the Craig analysis.

The ALJ's error, however, arises under the Fourth Circuit's
Mascio decision.  Specifically, in Mascio, the Fourth Circuit
found that an ALJ erred by using, at part two of the credibility
assessment, "boilerplate" language that "the claimant's
statements concerning the intensity, persistence and limiting
effects of [his pain] are not credible to the extent they are
inconsistent with the above residual functional capacity
assessment."  780 F.3d at 639 (citation omitted).  This method
"'gets things backwards' by implying 'that ability to work is
determined first and is then used to determine the claimant's
credibility.'"  Id. (quoting Bjornson v. Astrue, 671 F.3d 640,

-9-

645 (7th Cir. 2012)).  Instead, "the ALJ here should have

compared [the claimant's] alleged functional limitations from

pain to the other evidence in the record, not to [the

claimant's] residual functional capacity."  Id.

Similarly, the ALJ clearly erred at step two of the Craig

analysis in the instant case by considering the credibility of

Plaintiff's testimony through the use of the same objectionable

comparison to the RFC that was found improper in Mascio.

Specifically, the ALJ found that Plaintiff's "medically

determinable impairments could reasonably be expected to cause

the alleged symptoms; however, the claimant's statements

concerning the intensity, persistence and limiting effects of

these symptoms are not credible to the extent they are

inconsistent with the above residual functional capacity

assessment."  (Tr. at 15.)  The question thus becomes whether

this error is harmless.

Mascio is also instructive on the harmlessness issue.  In

Mascio, the Fourth Circuit explained what harmless error would

look like in these circumstances, stating: "The ALJ's error

would be harmless if he properly analyzed credibility

elsewhere."  780 F.3d at 639.  The Fourth Circuit clarified that

an ALJ discharges this obligation when he "explain[s] how he

decided which of [the claimant's] statements to believe and

which to discredit."  See id. at 640.  In Mascio, the ALJ failed

-10-

to explain himself accordingly, beyond "the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering [the claimant's] residual functional capacity." Id. The "lack of an explanation require[d] remand." Id.

Therefore, per Mascio, the relevant harmlessness question now becomes whether the ALJ explained how he decided which of the claimant's statements to believe and which to discredit. This court concludes that the ALJ failed in this regard and remand is therefore in order.

More specifically, in this case, the ALJ's credibility analysis summarizes much, but not all, of Plaintiff's testimony. (See Tr. at 15.) By way of example,[4] the ALJ did not mention in his decision Plaintiff's testimony that she could only sit or stand for "a few minutes" before experiencing back spasms "like . . . a vice" that forced her to lie down. (See Tr. at 15, 33- 34, 43-44.) Consequently, given this selective recitation of Plaintiff's testimony, it is far from clear if the ALJ considered all of Plaintiff's hearing testimony.

The court is well aware that, in most cases, a statement by the ALJ that he considered all of the evidence is sufficient to demonstrate that the ALJ considered the entire record. See,

---

[4] The examples the court provides herein are not exhaustive.

-11-

e.g., Grubby v. Astrue, No. 1:09cv364, 2010 WL 5553677, at *6
(W.D.N.C. Nov. 18, 2010) (citing Rappaport v. Sullivan, 942 F.2d
1320, 1323 (8th Cir. 1991)) (concluding that, because the ALJ
stated that he considered the entire record in making his
decision, the court could reject the claim that the claimant's
testimony and associated report were not considered).  The court
notes too that here the ALJ said he considered the entire
record, which includes Plaintiff's testimony.  (Tr. at 11, 14-
15.)  Nevertheless, given the ALJ's use of the objectionable
boilerplate, his selective recitation of Plaintiff's testimony,
and, as described below, his tacit adoption of some (but not
all) of that testimony, the court cannot adequately review the
ALJ's credibility analysis.  See Radford v. Colvin, 734 F.3d
288, 295 (4th Cir. 2013) ("A necessary predicate to engaging in
substantial evidence review is a record of the basis for the
ALJ's ruling." (citation omitted)); see also Lopez ex rel. Lopez
v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003) (concluding that
an ALJ is required to build an "accurate and logical bridge"
between the evidence and his conclusions (citation omitted)).

    More specifically, the ALJ seems to credit some of
Plaintiff's testimony while discounting other testimony, all
without explanation.  For example, Plaintiff testified that she
could not lift her arm out in front of her body without shoulder
pain, (Tr. at 32), and the ALJ appears to have at least

-12-

partially credited this testimony because he limited her to only

occasional overheard reaching, (Tr. at 14). However, Plaintiff

also testified that she could not "pick up a gallon of milk,"

(id. at 32), but the ALJ concluded that she could perform light

work, which involves the frequent lifting or carrying of objects

weighing up to ten pounds, but in any event lifting no more than

twenty pounds at a time, (id. at 14); see 20 C.F.R.

§§ 404.1567(b), 416.967(b). Likewise, as mentioned above,

Plaintiff testified that she could only sit or stand for a few

minutes at a time before experiencing back spasms requiring her

to lie down, (Tr. at 33-34, 43-44), however, the ALJ never

included, or explained why he would not include, a sit/stand

limitation in Plaintiff's RFC, (id. at 14-17).

Whether Plaintiff requires a sit/stand option is important.

Though the ALJ did not include one in Plaintiff's RFC

determination, he did inquire about what impact the presence of

a sit/stand option could have. For example, in a hypothetical

that the ALJ presented to the VE, he included a limitation to a

sit/stand option and then asked if it would "change any of the

[job] samplings . . . provided." (Id. at 51.) The VE

responded:

> Your Honor, possibly. There is going to be some loss
> of efficiency when somebody has to change positions.
> But, if you can be in one position or the other and
> alternate say for every hour or so, I don't think there's
> going to be any impact. If you get down to having to

-13-

change positions every 45 minutes, you'll probably lose
about a third of these jobs.  If you go much below
alternating every 30 minutes, then it starts to become
a problem.  And, certainly, if anybody has to change
positions every 15 minutes or so, or if either one of
the alter [sic] needed positions is for about 15 minutes
and an aggregate those periods add up to around two
hours, I don't think you can work on a sustained basis.
Two hours out of an eight-hour day.

(Id.; see id. at 52-53.)  Consequently, the question of whether

to credit or discredit Plaintiff's testimony on this issue may

have a very real outcome on her disability determination.  The

court therefore concludes that the ALJ's credibility analysis is

incomplete and not subject to review in the present form and

therefore this error is not harmless.[5]

---

[5] See, e.g., Jones v. Colvin, No. 4:14–CV–00200–RN, 2015 WL
4773542, at *9 (E.D.N.C. Aug. 13, 2015) ("Having failed to
properly and thoroughly analyze Jones's credibility, ALJ Allen
failed to cure any issue created from the use of problematic
boilerplate language criticized in Mascio."); Carver v. Colvin,
No. 1:13CV13, 2015 WL 4077466, at *10-12 (M.D.N.C. July 6, 2015)
(recommending remand where the ALJ failed to articulate
meaningful reasons beyond the objectionable boilerplate
language); Roxin v. Comm'r, Soc. Sec. Admin., Civil No. SAG–14–
2311, 2015 WL 3616889, at *3 (D. Md. June 5, 2015) (remanding
where use of objectionable boilerplate language was deemed
prejudicial because "the ALJ's ensuing credibility analysis does
not make clear the reasons for the adverse determination");
Thrasher v. Colvin, No. 7:13-CV-245-FL, 2015 WL 1431702, at *3-4
(E.D.N.C. Mar. 27, 2015) (remanding where use of objectionable
boilerplate language and subsequent credibility analysis
rendered it unclear why the ALJ credited some of the plaintiff's
testimonial statements, but discounted others); Wright v.
Colvin, No. 5:13-CV-686-D, 2015 WL 1275397, at *2 (E.D.N.C. Mar.
19, 2015) (remanding for further proceedings where the ALJ used
the objectionable boilerplate language and failed to explain
otherwise why he credited some and disregarded other portions of
the plaintiff's testimony).

-14-

## IV. CONCLUSION

In sum, on remand the Commissioner should conduct a proper analysis in light of the principles articulated in Mascio. The court expresses no opinion regarding whether Plaintiff is disabled under the Act and the court declines to consider the additional issues raised at this time. Hancock v. Barnhart, 206 F. Supp. 2d 757, 763-764 n.3 (W.D. Va. 2002) (on remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted de novo).

**IT IS THEREFORE ORDERED** that the Commissioner's Decision finding no disability is **VACATED**, and that the matter is **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner is directed to remand the matter to the ALJ for further proceedings consistent with this order. To this extent, the Commissioner's Motion for Judgment on the Pleadings (Doc. 13) is **DENIED**, and Plaintiff's Motion for Judgment on the Pleadings (Doc. 11) is **GRANTED**. To the extent that Plaintiff's motion seeks an immediate award of benefits, it is **DENIED**.

A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 4th day of August, 2016.

_____
United States District Judge

-15-